UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| AMERICAN RAILCAR LEASING LLC, | ) ) ) |
| Plaintiff, | ) ) ) Case No: ) |
| v. | ) ) |
| MUSKET CORPORATION, | ) COMPLAINT ) |
| Defendant | ) ) |

## COMPLAINT

Plaintiff American Railcar Leasing LLC ("ARL") states as follows for its Complaint against Defendant Musket Corporation ("Musket"):

## NATURE OF ACTION

1. This complaint arises out of Musket's breach of its contractual obligations to preserve in good condition and assume financial responsibility for damage to the tank cars Musket leased from ARL.

## THE PARTIES

2. ARL is a limited liability company organized under the laws of Delaware and having its principal place of business in St. Charles, Missouri. ARL is in the business of leasing railcars to third parties throughout the United States, including tank cars used for transporting oil products.

3. Musket is an Oklahoma corporation, with its principal place of business in Texas.

## JURISDICTION AND VENUE

4. Subject matter jurisdiction of the causes of action set forth below is based on diversity of citizenship, pursuant to 28 U.S.C. §1332. ARL and Musket are citizens of different states, and the amount in controversy exceeds $75,000.

5. Musket entered into leases, which are the subject of this action, of railcars owned by ARL, which leases were negotiated and delivered to ARL in Missouri.

6. Musket generally conducts business in a number of states, including Missouri. Among other things, Musket is engaged in transporting commodities, including crude oil, to locations throughout the United States, including in Missouri and within this District. Musket advertises on its website that it manages the logistics for billions of gallons of crude oil, petroleum products, natural gas and renewable fuels transported across North America every year.

7. Musket regularly contracts with and transports commodities on behalf of entities located within this District. In addition, Musket regularly provides logistics; marketing; terminal, transportation and storage services; market solutions; risk management; fuel wholesale services; and other operational services to entities throughout the United States, including in Missouri and within this District.

9. In addition, Musket conducts business in Missouri and this District, including operating a terminal facility. Musket maintains business operations and has employees in this District, and accepts applications for positions of employment within this District on its website. (*See* Ex.3, screenshot of Musket website, advertising job openings for "Terminal Operator" and "Terminal Manager" positions in Saint Louis, Missouri.)

## THE MATERIAL FACTS

### The Lease

10. ARL and Musket are parties to a Master Service Contract dated November 17, 2006 and a Rider 1 issued pursuant to the Master Service Contract also dated November 17, 2006 (the "Rider" and, collectively with the Master Service Contract, the "Lease") for the lease to Musket of 100 tank railcars (the "tank cars."). (A true and accurate copy of the Lease are attached hereto as Exhibit 1.)

11. Between 2006 and 2010 two tank cars were removed from the Master Lease.

12. ARL and Musket entered into a renewal of the Rider (the "Renewal"), dated August 23, 2012, for the 98 tank cars subject to the Master Service Contract. The rental rates set forth in the Renewal expired by its terms on June 30, 2016. (A true and accurate copy of the Renewal is attached hereto as Exhibit 2.)

13. The tank cars leased remain in the possession, custody, and control of Musket.

14. The Rider specifies that the tank cars were to be used to transport "Motor Fuel," which is non-corrosive.

15. The Lease provides that New York law applies to any dispute relating to the Lease. (Ex. 1, ¶20.)

16. The Lease is a valid and enforceable contract.

17. All of the tank cars leased by Musket pursuant to the Lease were new and shipped to Musket directly from the manufacturer. Musket accepted delivery of these new tank cars and put them in service for the first time.

18. Pursuant to Paragraph 7 of the Master Service Contract, Musket agreed to "preserve the Cars in good condition" and "[a]t the termination of each Rider… [Musket] shall

return all of the [tank cars]…empty, free from residue, and in the same good order and condition as the cars were in when they were delivered by" ARL to Musket, "ordinary wear and tear excepted." (*See* Ex. 1.)

19. Paragraph 7 further provides that Musket "shall reimburse [ARL] for the cost of cleaning and any cars containing residue or for damage to any car…which have been affected by the commodity loaded therein." (*Id.*)

20. Paragraph 8 of the Master Service Contract provides that Musket "will indemnify [ARL] against loss or damage…to or by any of the cars…howsoever [sp.] occurring. . . . ." (*Id.*)

21. Paragraph 11 of the Master Service Contract provides that if Musket "does not return [the tank cars at the expiration of the Lease], as required by [the Lease]…all of the terms and conditions of [the Lease]…shall continue to apply." (*Id.*)

**Musket's Breach of the Lease**

22. According to the Association of American Railroads, the tank cars leased by ARL to Musket pursuant to the Lease are eligible to continue in interchange service for fifty years from their original month and year built.

23. Federal regulations define "Hazardous Materials Corrosive to Tanks or Service Equipment," as materials that "under certain conditions, can corrode carbon steel tanks or service equipment at a rate that may reduce the design level and reliability and safety of the tank or equipment to an unsafe level before the next qualification." *See* 49 C.F.R. 180 (Appendix D).

24. On information and belief, sometime in or about 2009 Musket loaded the tank cars with what is known as Bakken crude oil, which it then transported, that is highly corrosive and likely to cause substantial damage and render the tank cars unsuitable for lease after expiration of the Lease unless remediated at substantial cost.

25. On or about October 23, 2015, Musket notified ARL that it intended to send the tank cars to a storage facility to await return of the tank cars to ARL upon expiration of the Lease.

26. Between November 2015 and March 2016, Musket sent release documents to ARL, which included photos of some of the tank cars, which photos revealed corrosion.

27. In March 2016, ARL caused to be inspected 20 of the 98 tank cars, all of which were found with corrosion, caused by Bakken Crude Oil, a highly corrosive form of crude oil. In August 2016, ARL and Musket each sent a representative to further inspect four cars jointly and both representatives confirmed the presence of corrosion.

28. On information and belief, all 98 tank cars have the same or similar level of corrosion as the 20 tank cars that were inspected.

29. Despite repeated demands, Musket has refused to remedy the corrosion and repair the tank cars such that they are restored to good condition, notwithstanding Musket's agreement that the tank cars in fact suffer from corrosion.

30. Musket's conduct as aforesaid constitutes a breach of the Lease.

31. Musket's breach of the Lease has caused and will cause ARL substantial damages, including, but not limited to, cost of repair and inability to lease the tank cars or sell them for the value of such cars in good and usable condition. Furthermore, pursuant to Paragraph 11 of the Lease, Musket is liable to ARL for additional rent as required by the Lease. ARL's damages are thus in excess of $1,000,000.

## **COUNT ONE**

(Breach of Contract)

32. ARL realleges and incorporates by reference, Paragraphs 1-31 of the Complaint.

33. ARL had performed all conditions precedent to enforce the terms of the Lease.

34. ARL has suffered damages, as aforesaid, by virtue of Musket's breach of the Lease.

WHEREFORE, ARL prays for judgment in its favor and against Musket as follows:

a. Enter judgment in favor of ARL requiring Musket to pay for damage to the tank cars;

b. Enter judgment in favor of ARL requiring Musket to pay pre-judgment and post judgment interest on all amounts owed; and

c. Grant such other and further relief as this Court may deem just and proper.

STINSON LEONARD STREET LLP


By: /s/ Andrew J. Scavotto
   Andrew J. Scavotto, #57826MO
   7700 Forsyth Boulevard, Suite 1100
   St. Louis, MO 63105
   Telephone: (314) 719-3048
   Facsimile:  (314) 249-3959
   andrew.scavotto@stinson.com

and

HERBERT BEIGEL & ASSOCIATES

   Herbert Beigel
   38327 S. Arroyo Way
   Tucson, AZ 85739
   Telephone: 520-825-1995
   Facsimile: 520-844-6215
   hbeigel@me.com
   Application for admission *pro hac vice* to be filed